We'll hear the next case, Ames v. New York State Department of Corrections. Mr. Lee. May it please the Court. My name is Alvin Lee. I represent the plaintiff appellant, Mr. Douglas Ames, and I was his counsel at trial as well. The district court here committed two fundamental errors that warrant reversal. First, the district court held that the Correctional Association of New York was not authorized to issue the Coxsackie report that's the subject of this appeal, but in doing so, it ignored the actual text of the association's authorizing statute as it was most recently amended and which in its current iteration states, and I'll quote from the statute, that the association shall have power to visit all the prisons in the state and annually report to the legislature their state and condition. So it is unambiguous from the face and from the plain language of the statute that the association has the power both to visit prisons throughout the state and to report on their conditions. In ignoring the text of the statute. So, Your Honor, obviously, the Abascal decision is the elephant in the room. It was recently decided by this Court. In the Abascal decision, the primary basis for admissibility advanced by the parties was the business records exception. It was not the public records exception. The public records exception was, of course, an alternative afterthought to the business records exception in that case. Well, alternative afterthought from your compatriot arguing the same side that you're arguing. Yes, certainly. But the vast majority. It was advanced on appeal. Right. As an alternative basis saying that even if the judge below got it wrong on this, that we're still right on the public records exception, so. Understood. However, the vast majority of the parties' briefing and arguments in that appeal was devoted to the business records exception. And so, respectfully, the panel did not have the benefit of devoted and focused briefing on the public records exception. It may be that the panel is deprived of somebody else's excellent advocacy, but we have a rule in the Second Circuit. Abascal ruled on that issue. Whether you think it was not necessary, I suppose we could decide that. But if we decide that the other panel did rule, don't you lose? Well, so, understood that while generally there is. Simple question. Yes. Understood that while generally the Court is bound by prior decisions of prior panels. We understand that well. Yes. Because the colleagues have regularly reminded us of that. Right. But the Court has publicly explained in recent years that it can depart from a prior panel's decision if it determines that it was incorrectly decided. In the Joe v. Bin Laden case decided in 2011, the Court actually specifically said that it is appropriate to depart from a prior decision where the departure is based on the fact that arguments are raised in a subsequent appeal that were not raised in the first appeal, and where in the first appeal the arguments around that issue were very sparse because the primary issues in that appeal were entirely different issues. And so respectfully, very respectfully, in understanding that you have an uphill battle, particularly given the composition of this panel and the composition of that panel, but very respectfully. It's the Court. Right. Respectfully, we would submit that the Abascal panel did make the same two fundamental errors that the district court made here and that it was incorrectly decided. Now, can you, can you, it seems that all the examples of the quasi-public agencies that you mentioned in your brief involve entities that are acting under some legal duty to do something. And here, where is that legal duty? If anything, the state legislature over time took away what might be thought of as a legal duty. And it doesn't exist anymore. So I don't believe that a legal duty was imposed in the quasi-public entity cases that we have submitted to the Court in our briefing. In those cases, duty is not mentioned at all, typically. And the focus of the inquiry is not on the duty of the organizations, the private watchdog organizations at issue. Instead, the inquiry is on whether the government created those organizations and whether the purpose of creating those organizations was to serve the government's needs. So if they acted as agents for the government under duties imposed by law, that's the, that's the Doyle case that you said. That is the Doyle case, and that is certainly one way in which a private entity can satisfy the public office requirement of the public records exception. We believe that the quasi-public entity doctrine is a separate way and that the legal duty element is not a part of that test. Instead, those cases, the quasi-public entity cases, seem only to focus on the inquiry of whether those organizations were created to serve a particular purpose for the government. And there isn't an analysis of whether, oh, are they authorized, are they only, are they required, are they merely authorized. That analysis typically isn't present in those cases, which I believe demonstrates that the, that analysis is not applicable to those cases. So here, we do believe that the Correctional Association does fit quintessentially the definition of a quasi-public entity. It was established and incorporated by the New York State legislature in 1846 for the express purpose of inspecting prisons and issuing these prison monitoring reports to the legislature. And the face of the association's authorizing statute states that the objective of conferring these visitation and reporting powers on the association is to aid the legislature in administering the State's prisons. Again, I'll read from the statute. It says that the association has conferred these powers so as may enable the legislature to perfect New York State prisons' government and discipline. So, again, we believe that this is the definition of a quasi-public entity and that it was error for the court, the district court below, to hold that simply because the Correctional Association is a private entity, that it could never satisfy the public office requirement of the public records exemption. You cite Hill v. Marshall, the Sixth Circuit case. Yes. Now, in that case, the Ohio Correctional Inspection Committee is actually a subcommittee, is it not, of the Legislative Service Commission? Yes. So that's why we did do a C also cited to that case. It's not the principal authority that we rely upon. Mostly we were looking at the language and the justification supplied by the Sixth Circuit in that case as applying to the justification for the quasi-public entity doctrine as a whole. And, of course, that is the underlying purpose of the public records exception, which is where the government has imbued a particular body, whether it be public or private, with this type of investigative authority. Then it is presumed to be reliable. Anything that it issues pursuant to that authority is presumed to be reliable, and it's up to the party opposing admission to demonstrate that for whatever reason it is untrustworthy. Speaking to the trustworthiness concerns that Defendants have raised, we have a couple responses. First of all, the district court never decided the trustworthiness issue. It is, of course, under Rule 803a Defendants. Does that preclude us from doing it? Well, I wouldn't say that it precludes this Court from doing so. The Defendants did not make any substantial trustworthiness arguments below. The arguments that are advancing here are not ones that they made below, and so we don't believe that based on the record before the Court that they have met their burden, and it is their burden again to demonstrate untrustworthiness. And the district court, as I recall, Court sort of commented, not sort of, did comment on hearsay within hearsay and lack of reliability, however. Yes. On the very same report. It is not the same report, Your Honor. So that report was issued years earlier about a different facility and employed a different methodology than the report at issue in this appeal. The last thing I will say about the trustworthiness and double hearsay issues that there are two sources of information in the Coxsackie report that's the subject of this appeal. There are the survey responses from the inmates themselves. But separately from the survey information, there are raw data and statistics supplied directly by the facility that they had an opportunity to review the accuracy of prior to the final publication of the report. They have made no arguments about double hearsay or the trustworthiness of the purely raw statistics that the facility supplied directly to the Correctional Association for inclusion in the report. These statistics go to, for example, the number of inmates as well as, particularly pertinent to our appeal, the number of grievances that were filed on a year-by-year basis as well as the categories of those grievances. Of course, our claim is that there was a nexus between our client's assistance in helping other inmates file grievances and the defendant corrections officer's constant issuance of misbehavior reports to him. And we believe that it would have rendered their testimony incredible. They testified at trial that they barely noticed the grievances at the facility. There was no grievance. Scalia. So was there an argument below that at least part of the report should have come in rather than the whole report? By your client? So certainly they did not make double hearsay arguments below so that we had the opportunity to. Scalia. No, no, no. When it was tendered and it was objected to, was there an argument made to the trial judge, Judge D'Agostino, right, that, well, Your Honor, even if this part doesn't come in because it's asking for inmates to comment on various things and just give responses, and we have no way of checking the truth of those, the statistical data ought to come in. So let's divide it up. We'll put in the statistical data and offer that separately. Was that done? We did not make that argument. But the reason we didn't make it was because defendants never made that argument in the first instance. So we did not have anything to respond to in terms of splicing and dicing. The district court excluded it in its entirety. And I don't believe that it would be appropriate for this panel to, in the first instance on appeal, do any sort of splicing and dicing of the report to determine the truth. Yes, absolutely. Thank you. May it please the Court. Frederick Brody for Defendant's Appellees. In light of this Court's decision in Abascal which found that the admission of a correctional association report was reversible error, the district court here cannot be said to have abused its discretion by excluding such a report. Let me address briefly the quasi-public entity argument that was raised by opposing counsel. Rule 8038 says nothing about quasi-public entities, nothing at all. It requires that the report be made by a public office. Now, the Abascal court held that the correctional association is not a public office within the meaning of the rule. That's 820F3rd at 566. That holding disposes of the question. In order to get within any of the exceptions in Rule 8038, the report must be issued by a public office. Correctional association is not a public office. Therefore, the report doesn't come in under the exception. Moreover, as one of Your Honors pointed out, the correctional association did not act at the State's direction. The cases that are relied upon by plaintiffs indeed involved situations where a private entity is directed or delegated or made an agent of the State to conduct a certain investigation. And they do, though, a report on conditions in a way that might be helpful to the State, right, to know what's going on? It might be helpful in a policy sense to the State, but that doesn't make the report any less hearsay or any less prejudicial in this case. Well, why not extend the public records exception? If the State legislature has given express authority to this entity to visit prisons and report on conditions? The State legislature originally gave the correctional association the power, and it shall be their duty, to visit, inspect, and report on the conditions in prisons. In 1973, the phrase, it shall be their duty, was removed from the statute. So all you have now is that they're allowed to visit the prisons. The power to inspect the prisons, the power to examine the prisons is gone. And they have the power to issue a report. Now, the power to do something is not the same as a direction from the legislature. The correctional association might decide not to issue any reports. And that would not be breaking any law. That would not be violating any sort of trust from the legislature. Moreover, it's only a specific type of report that, since 1973, has been authorized by the statute. It's a report, an annual report, to the legislature on prison conditions. Now, the report here was not made to the legislature. It's not addressed to the legislature or even to any particular legislator. And the report was not annual. In 2011, the year this report was issued, the correctional association also issued more than seven other reports on conditions in different prisons. So one cannot say, and there's nothing in the record to indicate, that this report was an annual report to the legislature. Unless the Court has further questions, given the binding effect of one panel's decisions on other panels, I'm prepared to rely on Abascal and rest on the briefs. Thank you. Thank you, Your Honor. Just very briefly, I'll just make one point. My adversary says that the association did not compile the report at the State's direction. However, that would seem to ignore the fact that there is a statute on the books currently that the legislature amended in 1973 and chose not to repeal that says that the association has the power to visit and to issue reports subsequent to their visits. But it no longer says the duty. Right. But the quasi-public entity doctrine, Your Honor, if you look through those cases, my adversary would have the Court believe that the only time that a report from a private watchdog organization is admissible under the public records exception is where it would be illegal for the private entity not to issue the report. The Warren Commission in California, many of these other sort of private citizen review boards and whatnot, I don't believe that it would be they would be subject to any sort of legal challenge for not issuing the report. That's what they're charged to do because they were created by the government to serve a particular purpose, and that purpose is to issue a report. And that's exactly what the association did here. Thank you. Thank you. Thank you. Thank you both for your vigorous arguments. The Court will reserve decision.